By the Court. Vanderpoel, J.
It is now too well established to admit of doubt or controversy, that money paid under a mistake of facts, can be recovered back, in an action for money had and received. (Boyer v. Pack, 2 Denio, 107 ; Mowatt v. Wright, 1 Wend. 355 ; Bank of Orleans v. Smith, 3 Hill, 560.) It is conceded that the draft which the plaintiffs paid to the defendants, was a forgery; and the only question is, upon whom the loss should fall. Questions of this description are not always free from difficulty; as the decisions of the courts, especially those in England, have not always been consistent as to payment by mistake of bills or notes, when there has been a forgery. Chitty says, (Chitty on Bills 430, ed. of 1842,) that with respect to payments by mistake, of bills or notes, where there has been a forgery, the decisions and opinions have been contradictory; that there are many conflicting decisions upon the question, whether the party paying should be allowed to recover back the money from the person to whom he has inadvertently paid it. In stating the prominent reasons that have been put forth on both.sides of this question, he remarks, that the holder of a bill who has obtained payment, cannot be considered as having altogether shown sufficient circumspection— “ he might, before he discounted, or received the instrument in payment, have made more inquiries as to the signature and genuineness of the instrument, even of the drawers or indorsers thereof; and if he thought fit to rely on the bare representation of the party from whom he took it, there is no reason that he *254 should profit by this accidental payment, when the loss had already attached upon himself, and when, by an immediate notice of the forgery, he is enabled to proceed against all other parties, precisely the same as if the payment had not been made, and, consequently, the payment to him has not, in the least, altered his situation, or occasioned any delay or prejudice ; that of late, these considerations have influenced courts in determining whether or not the money shall be recoverable back.”
These views of the learned writer strike us as sound, and the considerations which he states as having, of late, influenced courts, we are free to say, have had a potent, if not controlling influence in bringing us to the conclusion we have reached in this cause. The defendants here were the agents of the Bank of Troy, and as such received the amount of the draft from the plaintiffs. They gave their principal credit on their books for the amount, but had not paid over the money. An agent’s merely passing money in account, giving credit, or making a rest, is not equivalent to a payment over. (Buller v. Harrison, Cowper, 568 ; Cox v. Prentice, 3 M. & Sel. 344 ; 5 Taunt. 456 ; Ibid. 815 ; Langley v. Warner, 1 Sand. R. 209.) Enough appears to show that the Bank of Troy was the agent of the Bank of Rutland to collect, and the question, therefore, in reality, is, whether the Bank of Rutland, whose first mistake gave currency to this bill, shall sustain the loss, or the plaintiffs, who paid the bill for the honor of the Canal Bank of Cleveland.
The act of the plaintiffs in paying the bill, supra protest, is sanctioned by the commercial law. (Story on Bills, § 121, 122, 123.) The party who accepts and pays a bill, supra protest, has his own rights and recourse over against the person or persons for whose honor he accepted the same, and against all other parties to the bill, who are liable to the same person or persons. (Story, § 124.) He is not, then, to be regarded as a mere volunteer, who has officiously obtruded himself into the position he occupies, and who is therefore to be regarded with disfavor by the court.
The defendants had handed the bill to Mr. Campbell, their notary, after the drawees had refused payment for want of funds. On the 20th of September, one of the plaintiffs called at Mr. *255 Campbell’s office, and found Mr. Riker there, who, as he testifies, in Mr. Campbell’s absence, answered questions and did business for him. He answered the plaintiff, on inquiry made by the latter, that Mr. Campbell had a draft of $1000 of the Canal Bank of Cleveland on the American Exchange Bank, which the defendants had left with him, to be protested. Whereupon, the plaintiff handed to Mr. Riker his check for the amount of the draft and protest, to be delivered to Mr. Campbell, which he did so deliver to him on the same day, and the latter, on the same day, paid it over to the note-teller of the defendants, who credited it to the Bank of Troy. When the plaintiff paid it, he acted upon the representation of Riker, the agent of their notary, that the notary had such a draft, that is, a real draft, drawn by the Canal Bank of Cleveland on the American Exchange Bank. The payment was made on the faith of this representation when, in point of fact, it was not true. Ought the defendants to profit by such a payment, which, if not induced by the representations of their own agent, was accidental, and made in ignorance of - a most material fact 1 More especially ought the defendants, to be exonerated from the obligation of refunding this payment, when they had notice of the mistake before they paid over the money to their principal, and before their situation, in respect to their principal, was in any respect changed. The case of The Canal Bank v. Bank of Albany, (1 Hill, 287,) was that of money paid on a forged indorsement of a draft. The court hold that the defendants were bound to refund, on the ground that money paid by one party to another, through a mutual mistake of facts, in respect to which both were equally bound to inquire, may be recovered back. We are aware of the distinction between that case and the present, in the fact that there the name of the indorser was forged, and that in such a case the acceptor who pays in ignorance of the forgery, may recover back the money from an innocent holder, on the ground that he is not presumed to know the signature of every indorser. But when the name of the drawer is forged, the acceptor who pays the bill, will not, as a general rule, be allowed to dispute the genuineness of the drawer’s signature. He is presumed to know the signature of the drawer when he *256 accepts, as he is supposed to be in correspondence with him. In Smith v. Chester, (1 T. R. 655,) Buller J. says, when a bill is presented for acceptance, the acceptor looks to the hand-writing of the drawer, and he is precluded from afterwards disputing it; and that it is on that account that he is liable, though the bill be forged.
The plaintiffs here are not the acceptors. They did not look at the signature of the drawers when they made the payment, because they had not then the opportunity to do so. They gave their check to Riker before they saw the bill, and on the faith, induced by Riker’s representations, that Campbell had a genuine bill drawn by the Canal Bank of Cleveland. Though the plaintiffs are not the drawees, yet had the American Exchange Bank, which was the drawee, paid the bill under the circumstances disclosed in this case, in respect to the plaintiffs, we cannot see upon what sound principles they could be precluded from recovering it back. Had the American Exchange Bank paid the bill to Riker without seeing it, on the representation of the latter that Campbell had such a bill; though standing in the relation of drawee, the bank thus paying would not come within the reason of the rule which precludes the drawee and acceptor from recovering back the money when the name of the drawer is forged. The American Exchange Bank would not have done, (because they could not when they made the payment,) what Justice Buller says every acceptor is presumed to have done, looked at the handwriting of the drawer to be satisfied that it is genuine. Suppose one of the officers of that' bank had called upon the notary, and asked him whether he had such a bill, and the latter had answered in the affirmative, but that he could not then exhibit it, as the key of the desk containing it was in the possession of his clerk then out, and the officer of the bank had paid the bill on the faith of such representation, without seeing it, there is surely" no sound principle of law or ethics, which would preclude the bank as drawee, in such a case, from questioning the genuineness of the drawer’s signature, or recovering back the money. The reason which generally seals the mouths of the drawee and acceptor against denying the signature of the drawer, would not then have *257 existed. Though the case of The Canal Bank v. Bank of Albany, is different from 'the present, in the particular above stated, yet the reasoning of the learned judge who delivered the opinion in that case, goes strongly to sustain the present plaintiffs. The learned judge also speaks rather disapprovingly of the case of Cocks v. Masterman, (9 Barn. & Cres. 902,) (a case much relied upon by the defendants,) and seems to intimate a doubt whether it ought to be followed. (1 Hill, 293.)
In Cocks v. Masterman, the court expressly waived an opinion upon the main question, whether the plaintiff there could have recovered back the money, if he had given seasonable notice of the forgery. The case turned entirely upon the ground, that notice of the forgery was not given by the plaintiff to the defendant on the same day the former discovered it. Judge Cowen, in the case of the Canal Bank, speaks of the rule adopted in Cocks v. Masterman, as one of “ rigor.”
The case of Wilkinson v. Johnson, (3 Barn. & Cres. 428,) seems rather to conflict with Cocks v. Masterman. In the former, the plaintiff paid the bill for the honor of one of the indorsers. It turned out, that the names of the drawer, acceptor, and the indorsers, for whose honor the plaintiff had paid the bill, were ail forged; and it was held, that the plaintiff could recover back the money from the holder of the bill, to whom he had paid it under a mistaken opinion that the signature of the supposed drawer was genuine. The conclusion of the court, and the reasoning of Abbot, Ch. J., in that case, favor most of the positions taken by the plaintiffs here.
We also think, that due diligence was used by the plaintiff in giving notice of the forgery, and that no possible prejudice resulted or could result to the defendants, or to the Bank of Rutland, from the retention of the notice of protest for the period it was stayed at the plaintiff’s request. They could not recover from the Canal Bank of Cleveland. The only person from whom they could recover was “ E. S. Moore,” the forger of the bill. It does not appear, that he had any residence where they could have sent notice to him, and it would hardly lie in his mouth to say, that he was not obliged to pay a forged draft, because he was not duly notified of its protest. (Story on Bills, *258 § 308.) We are of opinion, that the plaintiffs used due diligence. (1 Hill, 291, and cases there cited.)
The plaintiffs are entitled to judgment.