# NEW YORK COMMON PLEAS.

THE NATIONAL BANK OF THE COMMONWEALTH agt. THE GROCERS' NATIONAL BANK.

A bank upon which a check is drawn, having paid the same, cannot recover back the money from the person to whom it was paid, although the check prove a forgery.

The loss under such circumstances should fall on the bank upon which the check was drawn. A bank should know the signature of its dealers.

The right of a party ultimately to be affected is not concluded by what transpires at the *New York clearing house*, or the entries made there, in respect to a check which passes through it. The clearing house does not pass upon the genuineness of the paper.

Payments involuntarily made may be recovered back, if the yayment was *in fact* improper.

*General Term, November*, 1867.

*Present*, DALY, *P. J.*, BRADY *and* VAN VORST, *Judges.*

THIS is an appeal from a judgment rendered by the justice of the first judicial district court in the city of New York, on the 26th March, 1867, in favor of the plaintiff· and respondent, against the appellant and defendant. The action was commenced before the justice by summons, with a complaint. annexed. On the return day, the parties appeared before the justice, and the defendant interposed no answer to the complaint, but admitted the facts stated therein to be true. The case was submitted to the justice on the· complaint, whereupon the justice rendered judgment in favor of the plaintiff·for the amount for which the check purported to be drawn; from which judgment this appeal is taken to the general term of this court.

The complaint avers that in December, 1866, the plaintiff received on· deposit from one of its dealers a bank check drawn upon the defendant. That the check was *passed by the plaintiff to the credit of their dealers*. That the plaintiff and defendant are both members of the New York Clearing House Association, which is formed for the purpose of adjusting the balances of accounts and settling the dealings of and between the several banks in the city of New York. That by the constitution and rules of the Clearing House Association, the checks on other banks, received by banks belonging to the association from any of its dealers, are, on· the morning of the day next after their receipt, presented at the clearing house, and then all the checks so received by said banks respectively are assorted for exchange between said banks, and the amount of every check then appearing to be drawn against any bank is credited in account to the bank to which it is presented, and is charged and debited in account against the bank on which it appears to have been drawn, in

the accounts of said clearing house, whether the same *be or be not good or valid.*

That in accordance with the above mentioned custom, the plaintiff, on or about the 13th day of December, 1866, sent the check to the clearing house, and the plaintiff was then and there credited and the defendant debited with the same. That the defendant, on the 6th *of March,* 1867, returned the check through the clearing house to the plaintiff, on the ground that the same was a forgery, in violation of the rules prescribed by the association and of the rights of the plaintiff; and that thereupon defendant was credited *and the plaintiff debited* with the amount of the check, on the books of the clearing house association. Whereupon plaintiff immediately brought this suit to recover the amount from the defendant.

RAYMOND & COURSEN, *for defendant and appellant.*
CONVERS & LYMAN, *for plaintiff and respondent.*

*By the court,* VAN VORST, J. The drawee of a check or bill of exchange is presumed to know the handwriting of the drawer and the genuineness of the signatures to the paper; and having paid the same, although it should afterwards be discovered that the name of the drawer was forged, he cannot recover back the money from the party to whom it was paid.

This was determined quite early, in *Price* agt. *Neal* (3 *Burr,* 1354). In that case, two forged bills were drawn upon the plaintiff. Notice of the first bill was left at the plaintiff's house on the day it became due. Plaintiff sent his servant to call on the defendant to pay it, which was done. The other bill the plaintiff accepted and paid at maturity. On discovering the forgery, plaintiff brought an action for money had and received, to recover back the amount paid. The court held that the action would not lie. Lord MANSFIELD said it was incumbent upon the plaintiff to

be satisfied that the bill drawn upon him was the drawer's hand, before he accepted or paid it, but that it was not incumbent on the defendant to inquire into it.

If the holder was at all implicated in the forgery; the action would lie against him. (*Bank of Commerce* agt. *Union Bank*, 3 *Comst.* 230.) In this last case, the Bank of Commerce was allowed to recover back the amount of a forged bill which it had paid to the Union Bank, but the recovery was justified on the ground that the forgery was not in counterfeiting the *name* of the drawer, "but in altering the *body of the bill;*" there being no presumption that the *body of the bill* is in the handwriting of the drawer, or in any handwriting known to the drawee, and it is unreasonable to require of him knowledge of the handwriting of any part of the bill, except the signature of the drawer.

The case first above cited charges the loss of the drawee to his own negligence, in accepting or paying a bill which he should have known to be a forgery. The last case does not question, but in terms affirms, the principle announced in *Price* agt. *Neal.*

The check in this case appears to have come regularly to the plaintiff, in the course of business, from its dealers, and under no circumstances to excite suspicion or make inquiries necessary. The check went to the clearing house, and was there, in an adjustment of the checks and accounts between plaintiff and defendant, in pursuance of the rules of this body, credited to plaintiff and charged to defendant. As the usage of the clearing house is not to pass upon the genuineness of the paper which passes through it, the act of debiting the defendant with the amount of the check should not charge the defendant with having adopted or accepted the check. But the check went from the clearing house to the defendant's bank, and was there received, and its being charged to it at the clearing house was acquiesced in by the defendant. It does not appear how soon the defendant ascertained the forgery, but it appears that it held on to the check for sev-

eral months, and then, "in violation of the rules prescribed by the association and of the rights of plaintiff," returned same to the clearing house, and caused it there to be debited to the plaintiff and credited to itself. The plaintiff at once repudiated this debiting of the check to its account, and of the return of the check, by bringing this action. If the defendant can in this way, and by the instrumentality of the clearing house, and against its rules, succeed in getting back money which it had previously paid on a forged check, it may do indirectly what it cannot do directly. It is quite clear that, if the defendant had sued the plaintiff for the money as soon as the forgery was discovered, it would have failed in the action. The fact that the Bank of the Commonwealth is plaintiff, rather than defendant, cannot change the absolute rights of the parties.

The payment by the plaintiff, on the return of the check to it, was not voluntary, it was forced by the action of the clearing house. This action is equitable in its nature. The question really is upon whom the loss should fall, under the circumstances of this case. I think the defendant should bear the loss.

Judgment affirmed.