Barrett, J.
The facts admitted by this demurrer, if they do not add a fresh chapter to the category of crime, serve at least to illustrate the endless variety of its resources, and the almost unaccountable sinuosity of its paths.
A swindler buys from the Ridgely National Bank of Springfield, Illinois, a genuine bill of exchange for twenty dollars and twenty cents, on the National Park Bank of this city. His primary object in this transaction is to procure, as a basis for his deliberately planned fraud, one of the printed or engraved forms of such instruments in use by the Ridgely Bank, together with the genuine signature of its cashier. He next proceeds, Toy means of acids, to obliterate the name of the fictitious payee, also the words and figures “twenty^,” representing the sum for which the bill was drawn, and, more singular still, the name of the drawer. This leaves the date, the number of the bill, and the drawee’s name intact. The name of E. Gr. Panchón, also a fictitious person, is then substituted for that of John Wise, the payee originally named ; the amount is altered to sixty-four hundred dollars by simply writing the words “ sixty-four hundred” upon the blank space produced by the obliteration of the words and figures “twenty ,20°0,” and the drawer’s name, “William Ridgely, cashier,” is written upon precisely the same spot as that previously occupied by the genuine signature.
■ Why the forger should have made any alteration except in the amount, why he should have substituted one fictitious payee for another, and why he should seemingly have lessened his chances of success by disturbing the genuine signature of “ William Ridgely, cashier,” are questions which, although not material to the present discussion, must be interesting to the detective and to those who make a metaphysical study of the freaks and morbid operations of the human mind. Certain it is that but for this eccentric and apparently purposeless piece of criminal surplusage, there would have been no doubt, upon the authority of Bank of Com *140 merce v. Union Bank (3 N. Y. [3 Comst.], 230), of the plaintiffs’ right to recover, the court of last resort having there held that the drawee is not bound to detect, nor responsible, in case of acceptance or payment, for alterations in the amount of an originally genuine bill.
But to resume. The alterations having been thus effected, the swindler betakes himself to Nashville, Tennessee, where he completes the operation by a sale of the bill to the Third National Bank of that place, who indorse it to the defendants in this city. The latter then present it to the plaintiffs, who innocently pay it, and, upon discovery of the facts, some seventeen days later, immediately notify the defendants, demand' a return of the money, and, upon its refusal, bring this action.
The difficulty in disposing of the question thus presented consists neither in arriving at the justice and common sense of the case, nor in the obscurity of the underlying principle. It is debatable only because of the superficial consideration which the subject has received, and the absence of a guiding principle in one of the earlier English cases (Price v. Neale, 3 Burr., 1354), and because of some dicta in our own courts, in which subsequent criticisms upon that case, and, indeed, the whole tendency of modern English authority, are completely overlooked, and the doctrine of Price v. Neale is treated as well settled and unquestioned, and, so far as certain obiter expressions go, is followed, upon the principle of stare decisis. The latter doctrine is of course exceedingly important, but in this age of searching analysis and ruthless criticism, precedents other than those furnished by our court of last resort, are valuable less for their general conclusions than for the reasoning upon which the result is based ; and ancient rules are binding only because of their ability to stand the.test of modern thought, and to meet the wants which arise in a progressive and commercial age, and spring from an advanced civilization.
Before examining the cases to which I refer, let u$. *141 for a moment consider the question presented, in the light of principle.
The Nashville Bank, when, through the defendants, it presented the bill in question to the plaintiffs for payment, was already robbed. The act had been accomplished—the money was gone ; and in its place the bank held a piece of paper, which, except to the extent of the twenty dollars and twenty cents, was absolutely worthless. Such being the condition of the bank, it presents that piece of paper to the plaintiffs, and the doctrine of Price v. Neale is that all the subsequent rights of the parties hinge exclusively upon the chance of the teller’s failure then and there to detect the forgery. If the discovery be made, the defrauded party continues the loser, but if, by any to the one, happy, to the other, unhappy, accident, the discovery should not be made, the loss is immediately shifted upon the party paying ; and the defrauded party, without the trouble of pursuing the thief, in effect recaptures his property by being restored to the precise pecuniary condition in which the swindler found him. Thus, without either consideration or consent advisedly given, but by the purest accident, or, to put it at the very worst, by a piece of mere negligence, the drawee’s title to his money becomes hopelessly and irrecoverably changed. To such reasoning I can never yield. One can well understand that if the drawee accept the bill, and upon the faith of such acceptance a party purchase the paper in good faith and for value, it would be inequitable to permit the acceptor thereafter to deny the genuineness of the drawer’s signature. Even where the holder has taken the bill without any such guarantee, and it has been paid, the injustice of allowing the money to be recovered back is equally comprehensible, where, between the time of the payment' and that of the discovery and notice of the forgery, the situation of the holder has been changed, and he has lost some valuable right—such as the discharge of prior and solvent indorsers ; or, to put it more precisely, where he can show that but for the accidental payment, and the *142 subsequent delay, he could have recovered the amount of his bill.
In other words, what strikes the mind as the satisfactory doctrine applicable to such cases, is that of estoppel in pais — that a party who admits a fact shall not subsequently be permitted to deny its truth, where the opposite party has acted upon the faith of such admission, and would be prejudiced by its denial (Plumb v. Cattaraugus ounty Mutual Ins. Co., 18 N. Y., 392; citing 6 Adol. & El., 475, 3 Hill, 265, and 8 Wend., 483 ; Truscott v. Davis, & Barb., 495 ; Martin v. Angell, 7 Id., 407 ; Otis v. Sill, 8 Id., 102). Drifting away from this legal principle, it seems to me that we are entirely at sea, and without chart or guide.
Now let us look at the cases. It will be apparent, I think, in reviewing them, that while the condition of the source of our authority was such as has been described, ■the explanations of some judges, the distinctions taken by others, the placing of subsequent decisions upon different and better grounds, approximating more nearly to the truth, accompanied at times by downright dissent and protest, indicate not only the absence of that hearty approval so essential to the force of precedent, but a sustained and constantly advancing tendency in the direction of the correct principle.
The first case of any note is that of Jenys v. Fawler (2 Strange, 946), in which the acceptor’s demand of proof of the drawer’s signature, claimed to have been forged, was refused, because [per curiarn\ of “the danger to negotiable notes.” The extraordinary idea here advanced of ignoring the very existence of forged paper, on the ground, as it were, of public policy, was soon dropped, and in Cooper v. Le Blanc (Id., 1051) it is said that while a forgery of the drawer’s signature could not be proved by comparison of handwriting, the chief justice was inclined to allow proof of actual forgery. And thereafter it seems to have been assumed, the later cases certainly proceeding entirely upon other grounds, that the likelihood of a bill being forged and yet escap* *143 ing the acceptor’s attention was scarcely one of those contingencies apt to be considered by a party to whom negotiable paper is offered for discount.
Price v. Neale is, however, by far the most important of the earlier cases. We have seen what was there held. The case was hastily and summarily disposed of. The views advanced upon the plaintiff’s behalf were not deemed worthy of an extended reply, as the defendant’s counsel was soon stopped, and Lord Mansfield, remarking that it was one of those cases which could be made no clearer by argument, proceeded orally to pronounce judgment. The decision seems to have been placed upon three grounds : 1. That it could “ never be thought unconscientious in the defendant to retain the money,” because he had innocently and in good faith purchased the bill for a fair and valuable consideration ; 2. Because the defendant was wholly free from negligence, whatever there was in that respect having been entirely upon the plaintiff’s side; and 3. That even if there were no neglect in the plaintiff, 1 £ yet there was no reason to throw off the loss from one innocent man upon another innocent man.”
It is difficult to perceive why the fact that the defendant had himself been robbed should be put forward as a justification, in the forum of conscience, of his retention of another man’s money. It is equally difficult to comprehend how, even admitting the deduction of fact, the legal title to property can be changed by, or ma le to depend exclusively upon, the one'party’s imprudence or the other’s circumspection. The deduction, however, of the one’s negligence, and the other’s carefulness, by reasoning somewhat in a circle, is made to rest, not upon fact or evidence, but upon another and still more extreme legal proposition, a species of corollary to the first, from which, as a matter of law, and as a conclusive sequitur, the defendant’s absolute freedom from negligence is sought to be established. This proposition, to quote the language of the opinion itself, is that, ‘ ‘ While it was incumbent upon the plaintiff to be satis* *144 fied that the bill drawn upon him was the drawer’s hand, before he accepted or paid it, it was not incumbent upon the defendant to inquire into it.”
If by the expression “not incumbent” a freedom from legal obligation were alone sought to be conveyed, it would be well enough — a party being under no compulsion to care for his own interests; but it is quite obvious from the context that this consideration was not distinguished from that of actual prudence. How, the discounting of paper without inquiry, although no offense against law, does not so clearly indicate proper prudence as to justify its being so laid down as a positive legal rule, and consequently its withdrawal as a question of fact from the consideration of a jury. Yet such is the conclusion which inevitably results from the language used. It comes to this, therefore : that it was not incumbent upon the defendant to make any inquiry ; that consequently, as a matter of law, it was not negligence to omit such inquiry ; and, as a final-sequence to this so found freedom from negligence, coupled with the plaintiff’s guilt in that respect, that the latter had lost all title to his money, which thus became, in justice and good conscience, the property of the defendant. These positions, whether viewed separately or in combination, are, to my mind, equally untenable, and the same may be said of the third ground, the fallacy of which would liave been more apparent, had the proposition itself been more accurately put; as, for instance, that there was no reason why the loss, which had already been “thrown from one innocent man upon another innocent man,” should be thrown back where it originated. Everywhere is the same inversion of logic and principle ; and that the case should have received even the sanction of a dietum, must be owing to the respect and confidence attached to a great name.
The confusion brought about by this loose doctrine respecting negligence and the effect of means of knowledge, became so great, that in subsequent and clearly distinguishable cases, it was repeatedly invoked, *145 and made the "basis of an undoubtedly correct result, while plain principles, well settled, and amply sufficient for the decision, were neglected and overlooked.
Of this class is Jones v. Ryde (5 Taunt., 495). There it was held that where a person discounts an altered bill for another, who passed it to him without knowledge of the forgery, the money, payment in full having been refused, may be recovered back. Here the result is clearly correct, and upon the principle which naturally suggests itself respecting payments made in forged paper or in any base coin (Markle v. Hatfield, 2 Johns., 455; Young v. Adams, 6 Mass., 182); but Dallas, J., put his judgment upon the ground that “the parties were equally innocent, and had equal knowledge and means of knowledge.” In a note to Jones y. Ryde it is said that a similar case (Bruce y. Bruce) differing from the former only in the fact that the drawee had innocently paid the bill, was argued on a subsequent day in the same term. It was contended, to use the words of the note, that that circumstance identified the case with Price y. Neale. But the “ court held that it was distinguishable from that case, but not irorn Jones y. Ryde.” But where was the distinction % If Price y. Neale were correct, the bill, from the moment of its recognition by the drawee, should have been treated as, for all intents and purposes, a genuine bill. And if the drawee could have recovered his money back from the holder, if the retention of it by the latter could never have been deemed unconscientious, why should that party be permitted to recover from the person who sold him the bill % If he retained the money he.should not be permitted to receive it a second time, and if he voluntarily returned it to the drawer, he did so in his own wrong. Of what the court considered the distinction to consist is not stated, and the judgment can only be accounted for upon the theory of unwillingness to overturn, in direct language, what was found to be an unsatisfactory precedent, so long as even shadowy and unsubstantial distinctions could be substituted.
*146 Price v. Neale was again adverted to in Smith v. Mercer (6 Taunt., 76). Two of the judges (Dallas and Heath) felt bound by the decision, but Dallas, J., gave the question óf a change in the holder’s situation, and of actual loss, a prominent place, both in the discussion and in the result. This was a step in the right direction ; and its importance must be felt when we consider how unnecessary it was, had the reasoning of Price -b. Neale been deemed all-sufficient. Indeed, he leaves it to be fairly inferred that if it had been made to appear that the situation of affairs had continued without change a recovery might have been had ; and finally he remarks that he wishes to confine his opinion “to the want of due caution in having paid the bill, the effect of which has been to give time to different parties.” ■Chambre, J., dissented, and refused to follow Price v. Neale, which he severely criticized, and treated as already overruled by Jones v. Ryde {supra). “A great part,” said he, “of tl}e doctrine of Price v. Neale seems :in that case (Jones v. Ryde) to be wholly repudiated by •■the court.” Finally, the chief justice (Gibbs) expressly placed his judgment on the ground of actual loss resulting from the discharge of the indorsers. By these special and peculiar features of the discussion, the authority of Price v. Neale, so far from having been re-affirmed “ by necessary'implication,” as was said by Mr. Justice 'Story, in Bank of the United States v. Bank of Georgia {infra), was in reality greatly weakened.
The question next arose in another form in Wilkinson v. Johnston (3 Barn. & C., 428). There the payment was' made for the honor of the supposed indorsers, whose signatures had been forged; and a recovery was permitted, upon the ground that the attention of the party paying “ may reasonably have been lessened by the assertion that the call itself was made to him in fact, though no assertion may have been made in words, and the fault, if he paid on a forged signature, was not wholly and entirely his own, but began at least with .the person.who thus called upon him.” This modifies *147 the doctrine of Price n. Neale as to the drawee’s negligence, so far as to permit its extent to be measured by a reference to the surrounding circumstances, while it in effect repudiates the rule with respect to the holder, fixing upon him, as it does, from the. mere possession of the forged signature, the charge of prior negligence, and certainly making it “incumbent” to scrutinize and inquire. The question of actual loss is also referred to as the criterion, in such a case, of the right to a recovery. Again, the recovery which had been permitted in Bruce ». Bruce (supra) was reasoned out to what we have seen to be its logical conclusion, and from this reasoning, coupled with the remark of the chief justice (Abbott), that it was “not easy to reconcile the opinion of some of the judges in Smith r. Mercer (supra) with the prior judgment of the same court in the case of Bruce v. Bruce,” it is evident that the latter was treated as establishing a new and better precedent, opposed to Price v. Neale, and one which Dallas and Heath, JJ., had themselves helped to make.
In Cocks v. Masterman (9 Barn. & C., 902), a recovery was refused upon the ground of actual loss, and no allusion was made to Price v. Neale, or Smith ■?>. Mercer. The case was sought to be distinguished, however, from Wilkinson v. Johnston, in that the notice of the forgery in the latter case was given on the very day when the payment was made, while in Cocks r>. Master-man it was delayed until the following day — a most unsubstantial distinction, and one resting upon no particular principle, or well defined rule. The mere entertaining, however, of this element of actual loss, although in itself, and as a separate question, illogically -discussed, is what lends importance to the case. The very fact of the judgment being based upon even an assumed loss, was a wide departure from Price 'o. Neale, and accounts for the complete silence with which this latter case was treated.
Dails v. Lloyd (12 Q. B., 531) ; Kelly v. Solari (9 Mees. & W., 54); Bell v. Gardiner (4 Scott, 632), and *148 Townsend v. Crowdy (8 Com. B. N. S., 477), although not cases of the accidental payment of forged bills, are useful, in so far as they definitively abrogate the dictum of Bayley, J., in Milnes v. Duncan (6 Barn. & C., 671), that means of knowledge and knowledge itself are to be treated, in this class of cases, as equivalent terms, and also in showing the constantly increasing liberality with which, even in cases of extreme neglect, and almost inexcusable oversight, recoveries of money paid under mistake of fact were permitted. Even forgetfulness of ' facts once known and officially acted upon, was held, in Kelly v. Solari, not to bar a recovery of money paid in consequence of such forgetfulness—the true inquiry being whether the payment was made advisedly.
But enough has been said to justify our premises that the extreme doctrine maintained in Price v. Neale is not now the law of England; and such was evidently the opinion entertained by Mr. Chitty as late as 1840. See Chitty on B., 11 Am. ed., p. 431, where, after referring to the ’* old rule, the following comments will be found : “ But on the other hand it may be observed that the holder who obtained payment cannot be considered as having altogether shown sufficient circumspection ; he might, before he discounted or received the instrument in payment, have made more inquiries as to the signatures and genuineness of the instrument, even of the drawer or indorsers themselves; and if he thought fit to rely on the bare representation of the party from whom he took it, there is no reason that he should profit by the accidental payment, when the loss had already attached upon himself., and why he should be allowed to retain the money, when, by an immediate notice of the forgery, he is enabled to proceed against all other parties, precisely the same as if the payment had not been made, and, consequently, the payment to him has not in the least altered his situation, or occasioned any delay or prejudice. It seems that of late upon questions of this nature these latter considerations have influenced the court in determining whether or not the money shall be *149 recovered "back ; and it will "be found, on examining the older cases, that there were facts affording a distinction, and that, upon attempting to reconcile them, they are not in contradiction, as might on first view have "been supposed.”
When we turn from the consideration of this subject in the English courts, and look at the cases in this country, and more particularly in this State, the mind at once receives a forcible illustration of the importance of separating the point actually decided in a case from the dicta which almost inevitably creep into the closest and best considered judgments.
In Bank of Commerce v. Union Bank (3 N. Y. [3 Comst.], 230), the point actually decided was that the acceptor was not responsible for alterations in the body of the bill, the drawer’s signature being genuine. The opening remarks of Ruggles, J., with respect to the effect of payment in a case where the signature is forged were therefore obiter.
The same may be said of similar remarks of Bronson, J., in Groddard v. Merchants’ Bank (4 N. Y. [4 Comst.], 147). There the plaintiffs had paid the bill for the honor of their correspondents, the supposed drawers. They had done so upon information respecting the existence and protest of such a bill, but without seeing the bill itself, owing to the absence of the notary public at the time when one of the plaintiffs called at his office, and left a check for the amount. It was held that the plaintiffs were not chargeable with negligence in paying the draft before they had seen it, and that, by a payment made under such circumstances, they could not be said to have affirmed their correspondents’ signatures. The rest was obiter, and was not supported, as in Bank of Commerce y. Union Bank, even by the citation of Price y. Neale. If the point had come up squarely in either of these cases, the subject would doubtless have been exhaustively considered, both upon principle and authority, and I feel entirely satisfied that these dicta would never have been pronounced.
*150 This may be the more confidently assumed from the decision of the same court in Merrill v. Tyler (Seld. N., No. 2, p. 47), wherein a much stronger case it was held that the acts or declarations of a party bind him by way of estoppel only to the extent that they have been acted upon by the party setting up the estoppel. The facts were that a party had received a promissory' note, to which the name of the defendant as maker had been forged, and had advanced half the amount of it befpre it was presented to the defendant. It was then presented to him, and he made such statements as to induce the holder to advance the residue of the note. Upon this, the court held that the defendant was estopped from showing the forgery, only to the extent of the advanees made on the faith of his statements—which was all that could be recovered, the forgery being established.
How certainly a party should not be held to a stricter accountability for the recognition of his correspondent’ s signature than for his own, and if, in the latter case, the ordinary rules of estoppel are to govern, why not, a fortiori, in the former %
But if the remarks made in Bank of Commerce v. Union Bank, and in (Goddard v. Merchants’ Bank are to have- any weight, opposite dieta are not wanting, as instance Judge Yarderpoel’s concurrence, in Groddard v. Merchants’ Bank (2 Sandf, 258, 254), in the remarks quoted from Chitty, and the intimation of Judge Cower in Canal Bank v. Bank of Albany (1 Hill, 290) that the doctrine that the acceptor “takes upon himself the knowledge of his correspondent’s handwriting, and shall be concluded, is going a great way, unless some bona fide holder has purchased the paper on the faith of such an act.”
In our own court, in Hational Bank of the Commonwealth v. Grocer’s National Bank (35 How. Pr., 412), the doctrine of Price v. Heale was partially stated and so far followed, but without any special inquiry or investigation, and mainly upon its supposed affirmance by the dicta in Bank of Commerce v. Union Bank (supra). *151 It is apparent, however, from the statement of the case, which was prepared by Judge Van Vorst, and really forms part of his opinion, that loss must have been occasioned by the great delay in the discovery of the forgery, after the bank had given its customer actual credit for the amount of the check, and th@ language of the opinion proper, to the effect that the drawee of a forged bill cannot, after payment and discovery of the forgery, recover back the money, must be read in conjunction with that bearing upon the consideration of the question of actual loss. The opinion certainly does not affirm the extreme points of the doctrine laid down by Lord Mansfield, and is not therefore authority against a recovery upon the special features of this particular case at bar.
The cases of Gloucester Bank v. Salem Bank (17 Mass., 33), and Bank of the United States v. Bank of Georgia (10 Wheat., 333), arose under payments by banks of what were supposed to be their own bills. These bills were their own promises to pay, and passed as money, and it might well be that in such cases, from motives of public policy, and owing to the difficulty of tracing money back and fastening it upon each preceding holder, a special rule should be adopted for the protection of the general public, and the bank be concluded by the recognition and payment of its bills. At all events, these cases are only authority for the precise point involved, and so far as their judgments are based upon an assumed analogy to the cases of payment, by drawees, of forged bills of exchange, it should be considered that the latter question was not discussed upon principle, but was left to rest almost entirely upon Price v. Neale, treated as an unquestioned authority, and as having been fully recognized by what, upon examination, will be found to be the loosest dicta in Smith v. Chester (1 Durnf. & E., 655), and Barber v. Gingell (3 Esp., 60), where nothing even was said upon the subject, and Bass v. Clive (4 M. & Selw., 15), and that, too, *152 "before Wilkinson v. Johnston, and the still later cases, had evoked the remarks quoted from Chitty.
This last consideration is equally applicable to Levy v. Bank of the United States (4 Dall., 234). In this case, which is very obscurely reported, the bank gave a depositor credit for a forged check. It seems to have been conceded, as it certainly was treated as a matter of course without discussion or citation of authority, that if the money had actually been paid upon the check, the depositor would have had an unquestioned right to retain it under all circumstances ; and' the ruling was, that the giving of credit in the customer’s bank book was equivalent to an actual cash payment.
Upon the other hand, we find the cases of Ellis v. Ohio Life Ins. Co. (4 Ohio [N. S.] 628), Bank of St. Albans v. Farmers’ & Mechanics’ Bank (10 Vt., 141), and McKleroy v. Southern Bank of Kentucky (14 La. Ann., 458). In the latter, the above remarks of Chitty are quoted and followed. In the Vermont case, much of the doctrine of Price v. Neale was said not to be the law of the present day, and the element of loss resulting from the want of immediate notice of the forgery was brought in ; while in the Ohio case, Judge Rahh'ey, in the course of an able and exhaustive discussion, points out the fallacy of Price *. Neale, and- its ancient doctrine, and goes a long way in the direction of the true principle.
The conclusion naturally arrived at, upon a careful review of all these conflicting authorities and dicta, is, that no one clear and comprehensive rule has been laid down and followed, nor- has any single principle been enunciated, the application of which would be sufficient for the accurate and just solution of all questions which might arise upon the subject. Applying them, however, as best we may, two important features are found in the case at bar which distinguish it from Price «. Neale, and bring it more nearly within the spirit which pervades the later cases. One is the actual negligence which, as a matter of fact, is chargeable to the defendants’ correspondents, *153 the Nashville Bank, and the other is the lessened attention which the circumstances attending the presentation and payment of the bill naturally superinduced. The averment upon the former head, in effect, charges the-Nashville Bank with having purchased the bill from the swindler in person, who was a total stranger, without scrutiny or inquiry. Such is the import of the statement, taken in its entire scope, and, of course, unexplained by the demurrer, that the bank discounted the bill for the person calling himself by the fictitious name of E. Gr. Fanchon. Nor, while in this connection, must we overlook the responsibility for alterations in the amount (Bank of Commerce v. Union Bank), and for the authenticity of every other signature upon the bill (Merchants’ Bank v. McIntyre, 2 Sandf., 431), which, as a matter of law, is ordinarily fastened upon the holder or party presenting the draft for payment, and which is claimed with much force to be applicable here, upon the ground that however the main question may be viewed, the case should at least be determined as though the drawers’ signature were in fact genuine, the payment, at the worst, amounting to but an inviolable admission of the genuineness of such signature.
With respect to the second point of distinction,—the plaintiffs’ lessened attention,—it must be considered that the bill presented had been genuine to the extent of twenty dollars and twenty cents, and remained unaltered in several important particulars, such as the date, number and drawees’ name. There, too, were the devices, vignette, design and general form with which the teller’s eye was familiar, and the bill came to him impressed with the well-known custom of banks with respect to identification before payment, and with a genuineness almost assured from its having passed through the double ordeal of two such institutions, surrounded as they are by those safeguards imposed by an accumulated experience, ignorance of which would have exposed the teller in good earnest to the charges of negligence and inefficiency.
*154 Thus the attention of the drawee, to use the language of Abbott, Ch. J., in Wilkinson y. Johnston, was “ reasonably lessened by the assertion which the call itself made to him in fact.”
i The reference once more to this case brings us to the final consideration as to what constitutes actual loss, and upon whom the burden of proof upon that subject should fall. Here, again, principle has been overlooked, and, as might have been anticipated, a conflict of general impressions is the result. In Smith y. Mercer we find Dallas, J., requiring the plaintiffs to prove a negative,—viz: that there had been no change of situation during the delay, and that no actual loss had been suffered. In Wilkinson y. Johnston notice of the forgery given on the very day of payment, was deemed sufficient, while in Cocks y. Masterman the. following day was considered too late. This latter case was disapproved, upon this point, in Canal Bank y. Bank of Albany {supra), and in Goddard v. Merchants’ Bank (2 Sandf., 247) ; the former holding that mere lapse of time in the abstract, however long, between the payment and notice of the forgery, 'would not, in that particular case, deprive the drawee of his remedy over-, provided he had incurred no unreasonable delay after the discovery of the forgery, while in the latter Wilkinson y. Johnston is referred to approvingly, although stated to be in conflict with Cocks y. Masterman.
The importance of a definite rule upon the subject was-recognized in Bank of the United States y. Bank of Georgia, where it was said that “actual loss is not necessary to be proved, for potential loss may exist, and the law will always presume -a possible loss in cases of this nature.” This doctrine may be well, enough, from considerations which have previously been adverted to, in the case of a payment by a bank of what are supposed to be its own genuine bills, but it is wholly inapplicable to bills of exchange. The true rule, in my judgment, is, to require the defendant to aver and prove his loss as a fact. The law can no more inflexibly pre *155 sume a loss from a delay of a year than from that of an hour, and to throw the burden of proof upon the plaintiff, who is in the dark respecting the parties with whom the defendant negotiated, would be an injustice as well as a complete inversion of the ordinary rules of evidence. But here there seems to have been no loss. * There can be no difficulty about the defendant’s recovering over from the Nashville Bank, and that whether they received the bill for collection or as actual purchaser. If the Nashville Bank became insolvent between the date of the payment and the discovery of the forgery, that should have been set up. Solvency is presumed until the contrary is shown.
The possibility of anything being recovered from the forger is exceedingly remote. His punishment was a matter of public concern, and he might have been arrested without a recovery of the money. Besides, the three days which elapsed before the presentation of the draft were probably as amply sufficient to enable him to make his escape, as the seventeen days before the discovery of the forgery. At all events, nothing can be presumed upon that head, and the loss, if any, must be pleaded and proved.
Other considerations were urged, which it will not be necessary to discuss, as the demurrer must be overruled, first, upon the ground that the acceptor is es-topped from denying the genuineness of the drawer’s signature only where, according to the ordinary rules of estoppel in pais, it would be inequitable to permit him to do so, and that the facts bringing the case within those rules, must be pleaded and proved by him who invokes the rule ; and, second, upon the speoial.circumstances of this case with respect to the prior negligence of the holder and his principal or predecessor, and .the lessened attention naturally resulting from the surroundings of the presentment to the plaintiffs. .
• Demurrer overruled with costs, with leave to the defendants to answer over within twenty days, upon payment of such costs.