Sutherland, J.
It appears from the complaint that not only the amount, and name of the payee, of the bill or draft were altered, but also that the name or words “Wm. Ridgely, cashier,” purporting to be the signature of the cashier of the drawers to the altered draft or bill, was forged, or counterfeited.
The case therefore made by the complaint is within the rule laid down by Lord Mansfield in Price v. Neale (3 Burr., 1354).
This decision was not overruled in Smith v. Mercer (6 Taunt., 76), but was recognized by a majority of the judges. Neither in Smith v. Mercer nor in Cocks v. Masterman (9 Barn. & C., 902), were the plaintiffs the drawees, but they were the bankers of the drawees. The rule laid down in Price v. Neale was fully recognized in Canal Bank v. Bank of Albany (1 Hill, 287); Bank of Commerce v. Union Bank (3 N. Y. [3 Comst.], 230; Goddard v. Merchants’ Bank (4 Id. [4 Comst.], 147); and United States Bank v. Bank of Georgia (10 Wheat., 333).
The elaborate and able brief submitted by the counsel for the plaintiffs has failed to satisfy me that I would be justified either by precedent or authority in so altering or qualifying the rule as laid down in Price y. Neale that it will not include the plaintiffs’ case, or in making the plaintiffs’ case an exception to the rule.
The defendants therefore must have judgment on the demurrer, with costs.
From the judgment entered on this decision, the plaintiffs appealed to the court at general term.
Barlow & Hyatt, for the plaintiffs,, appellants.—I. The plaintiffs paid this draft under three mistakes of *126 fact. (1.) As to the genuineness of drawer’s signature. (2.) Ignorance of the change in payees’ name. (3.) Ignorance of the change in amount.
II. Defendants claim that a drawee who pays a forged draft is estopped from denying the signature of his drawer, and cannot, under any circumstances, recover the money, no matter how careless the holder may have been, and no matter whether the recovery would put the holder in a worse position than if the payment had never been made, or not.
III. We claim that the party paying a forged draft can recover in two cases : 1. Where the holder or party receiving has himself been careless or in fault; that is, that the loss must fall where the first carelessness. has teen in point of time. 2. Where, although there has been no fault on the part of the holder, yet the recovery will put him in no worse position than if the payment had never been made. The rule claimed by the defendants has never been established by decisions in this State, although assumed to be the law by dicta in several cases.
IY. At the bottom of all law on this subject are four English cases, which we ask the court to examine critically. The leading case is Price v. Neale (3 Burr., 1354 [1762]). It is like the one at bar, and is in favor of the rule contended for by the defendant. Lord Mansfield rests his decision on two grounds : 1. That all the negligence was on the side of the plaintiff. 2. That even if there were no neglect on the part of the plaintiff, yet there was no reason for throwing the loss from one innocent person upon another. Now this last ground has been wholly repudiated, and if Price ®. Neale can be sustained at all, it must be on the ground that all the negligence is on the part of the party paying. The law now is, that where both parties are innocent, or free from carelessness, or'both are negligent, the party paying can recover. That Price v. Neale properly turned on the negligente of the plaintiff, see Markle v. Hatfield (2 Johns., 462); Canal Bank v. Bank of Albany (1 *127 Hill, 290]; Jones v. Ryde (5 Taunt., 495); Merchants’ Bank v. McIntyre (2 Sandf., 431, 436) ; Ellis v. Ohio Life Ins. Co. (4 Ohio [N. S.], 661).
The next case is Smith v. Mercer (6 Taunt., 76 [1815]). This also is like our case, and an authority for the rule contended for "by the defendants. But the judges were not unanimous, nor did their opinions rest on the same grounds. Only two out of four judges assent to the principle of Price v. Neale. Mr. Justice Sutherland has intimated in his opinion in this case, that the fact that the plaintiffs in Smith v. Mercer were not the drawees, but the bankers of the drawees, distinguishes that case from the one at bar. But the direction of Evans to the plaintiffs, his bankers, to pay the draft, was like any other direction of a drawer to his drawee. The question was, whether the plaintiffs were bound to know the handwriting of their customer Evans, which is the same general question involved in this case.
The next case is Wilkinson v. Johnston (3 Barn. & C., 429). This case, therefore, in effect, overrules Price v. Neale. It will not do to say that the fact that the forgery was discovered the same day distinguishes it from Price v. Neale, because, as Abbott, Ch. J., says on page 434 of Wilkinson v. Johnston, “The decision of Lord Mansfield (in Price v. Neale) appears not to have been grounded on the delay.” It is true the court attempted to distinguish the case from Price v. Neale, because of a natural reluctance to overrule the prior decision of the same court, and the supposed distinction arises out of the fact that the payment is for honor. But this is no real distinction (Goddard v. Merchants’ Bank, 4 N. Y. [4 Comst.], 147 ; Ellis v. Ohio Life Ins. Co., 4 Ohio [N. S.], 655). Either Wilkinson v. Johnston overrules Price v. Neale outright, which disposes of this case, or it rests upon the distinction that “ the circumstances of the call upon the plaintiff (drawee) were such as might reasonably lessen his attention, and that the fault was not wholly his own.”
The next case is Cocks v. Masterman (9 Barn. & C., *128 902). This,' also, is an authority for the defendants herein, if it can be sustained. The court seem to have felt the absurdity of holding that the mere payment of a bill by the drawee, where he had done nothing to give it currency, and the condition of the holder would not be changed by the recovery—which is the doctrine of Price y. Neale—should preclude the party paying from recovering. Therefore, they bring in the element of injury to the defendant,--that is, that the delay to discover the forgery until the next day (though no indorser had been discharged), deprived the holder of a right,—was an injury to him, which precluded the plaintiff from recovering. This bringing in the element of actual injury to the holder was a step in the proper direction, and is in effect the rule we contend for,—that is, that where the recovery does not change the condition of the holder for the worse, the party paying may recover. But we do combat the assumption of the court as a matter of law, that the delay to. discover the forgery until the next day (no indorser having been discharged) was an injury to the holder. In Canal Bank v. Bank of Albany (1 Hill, 287), Cocks v. Masterman is disapproved, and in Goddard v. Merchants’ Bank (2 Sandf., 257) it is stated to conflict with Wilkinson y. Johnston.
V. These four cases rest on the negligence of the party paying, and that negligence consists in the neglect of the “means of knowledge.” Two English cases decided since 1840, entirely overrule the doctrine that a payment of this kind is such laches as precludes the party paying from recovering in the cases where no harm is done to the holder (Kelly v. Solari, 9 Mees. & W., 54 ; Townsend v. Crowdy, 8 Com. B. [N. S.], 477). The first of these cases decides that even forgetfulness of facts which were once known does not have this effect. In both these cases it was held that the plaintiff could recover, and the doctrine stated by Baley, J. (the same judge who decided Cocks y. Masterman), in Milner y. Duncan, that means of knowledge was equivalent to knowledge, and that a neglect of it was laches, is utterly *129 repudiated. Kelly v. Solari adopts the rule we contend for, that “if money be paid under a mistake of fact, it can be recovered back, unless something has subsequently occurred to render it unconscientious to recover it.” These cases must be considered as entirely upsetting the absurd rule, that mere carelessness and neglect to use the means of knowledge, such as existed in the case at bar, can prevent a recovery where no injury has been done thereby. These cases have had the effect to change the rule as laid down in Smith's Leading Cases (note to Marriott ». Hampton, vol. 2). In the fourth edition the rule is stated to be that money paid by mistake of fact, cannot be recovered back where the party paying has been guilty of laches. In the edition of 1867 (and in the one before that, also), vol. 2, p. 395, a note has been-added on the authority of Kelly v. Solari, and Townsend v. Crowdy, to the effect that the laches which precludes a party paying from recovering, must be something more than an omission to use the means of knowledge in their power (see the remarks of Williams, J., in Townsend v. Crowdy, p. 489). Utica Bank v. Van Giesen (18 Johns., 485), is wholly in accordance with Kelly v. Solari. At a much earlier date, Price v. Neale.was in effect overruled by Bruce v. Bruce, cited in note to Jones v. Ryde, 5 Taunt., 495, and commented upon by Gibbs, Ch. J., in Smith v. Mercer, 6 Id., 77.
VI. After a consideration of these authorities, we ask the court to consider on principle the rule contended for by the plaintiffs. A mere lucky accident cannot authorize a man to retain my money which has come into his hands by that accident, and where he will be no worse off by repaying it than if he had never received it. My negligence and carelessness is no reason why I should lose my money, unless some one has acted upon it, and been injured thereby.
VII. The right of the defendants to retain this money should be tested by the doctrine of estoppel in pais. The paying or certifying a forged check are equally negligent acts on the part of a bank, and must have precisely *130 the same effect on their rights (see Canal Bank v. Bank of Albany, 1 Hill, 289 ; Goddard v. Merchants’ Bank, 4 N. Y. [4 Comst.], 152). Now the rule of estoppel in pais is laid down in Plumb v. Cattaraugus Ins. Co. (18 N. Y., 392, 395), and in the other cases cited in 2 Abb. N. Y. Dig., 587, and is this : That an estoppel in pais will exist against a party where it appears, 1. That he has made an admission which is clearly inconsistent with the evidence he proposes to give ; 2. That the other party has acted upon the admission ; and 3. That he will be injured by allowing the truth of the admission to be disproved.
A drawee who pays a bill admits that the signature Is genuine. To hold that he cannot disprove it as against one who will not be injured by allowing it to be disproved, is to fly in the face of all the cases on estoppel.- If a man brings me a note purporting to be signed by myself, and asks me if it be genuine, and I say it is, I presume no lawyer would contend that I am estopped from denying the signature in a suit against me, unless -the holder took it afterwards on the strength of my admission, or unless, relying on the admission, he had failed to charge the indorsers, or something of this kind ; •,and if I had paid such a note I could recover it back. 'The court of appeals decided this very point in Merrill v. Tyler, Selden’s Notes (No. 2), 47, cited in 2 Abb. N. Y. Dig., 588, ¶ 106).
VIII. The authority of later cases and text-books is :álso against the doctrine of Price v. Neale (Kelly v. Solari, and Townsend v. Crowdy, supra ; Chitty on B., 12 ed., marg. p., 431; Goddard v. Merchants’ Bank, 2 Sandf., 253; Ellis v. Ohio Life Ins. Co., 4 Ohio [N. S.], 659 ; McElroy v. Southern Bank of Kentucky, 14 La. Ann., 458 ; Canal Bank v. Bank of Albany, 1 Mill, 287, 290 ; Irving Bank v. Wetherald, 36 N. Y., 335). And without any other authority we are convinced that the ' opinion of Babbett, J.,* in the case of National Park *131 Bank «. Fourth National Bank will make it wholly clear what the law should be.
IX. These authorities and principles, applied to the case at bar, sustain our case. The drawer is not discharged, because there is no drawer, the name being forged ; or rather there is a drawer only as to the fourteen dollars and twenty cents, and that we are liable for. The defendants do not need any protest or notice to enable them to recover against the Lexington City Bank. If they held it for collection, they can recover against their principal, as for money paid by mistake (Goddard v. Merchants’ Bank, 4 N. Y. [4 Comst.], 151). If the defendants bought it from the Lexington Bank, they can recover on the implied warranty that the instrument was genuine ; and the Lexington Bank need no notice to enable them to recover against the forger Fan chon (lb.). There is no need of notice of dishonor to enable each party to recover against all whose names were on the bill when he took it (Jones v. Ryde, 5 Taunt., 493; Gompertz v. Bartlett, 24 Eng. L. & Eq., 156 ; Herrick v. Whitney, 15 Johns., 240 ; Shaver v. Ehle, 16 Id., 201). It does not appear in the complaint whether the defendants bought this bill from the Lexington City Bank, or received it as agents for collection. It makes no difference which it was. If they received it for collection, and before notice had paid over the amount and settled their accounts with their principals, perhaps we should have been obliged to bring this suit against their principals, though it would not affect our right to recover against some one, and would not affect the principles we have been discussing above. But even this would not be so unless we knew they were agents when we paid them (Canal Bank v. Bank of Albany, supra; Merchants’ Bank v. McIntyre, 2 Sandf., 435). And Fuller v. Smith (1 Carr. & P., 198) holds that in no case should we be obliged to sue the principal instead of the agent to whom we paid the money. But it is enough to say, on this point, that even if the language of the complaint imported (which it does not) that the defendants held *132 the bill as agents for collection, still, the payment over to their principals, and that we knew them to be agents,, must be pleaded. Tjie point must arise on this demur-! rer. In considering whether we ought to recover against the defendants, we must consider, whether .the defendants can recover over against the Lexington Bank ; and we admit that whatever circumstances would render iti inequitable for us to recover against the Lexington Bank! should prevent our recovery against the defendants, in-j asmuch as the Lexington Bank will finally have to bear the loss. If the Lexington Bank, or the party (Ranch on, j so called) from whom they received the draft have become insolvent between the time of the payment of the! draft by us, and our discovery of the - forgery, then we ought not to recover from the defendants, because injury has resulted from our act. But such insolvency, if it' exist, is matter of defense, and must be alleged, which is not done in the answer. The intimation in Smith v. Mercer (supra), that it must be alleged and proved by the plaintiff in such a case, that no change has occurred to the injury of any parties by the neglect of the plaintiff, is unsound. 1. It requires the plaintiff to allege and prove a negative,—i. e., that the parties have not become insolvent. (2.) Those matters are more peculiarly within the knowledge of the defendants than of the plaintiffs. (3.) The presumption is that a man is solvent rather than insolvent; if the latter is claimed it must be proved (Walrod v. Ball, 9 Barb., 271, 276. (4.) An estoppel must be strictly proved ; and the defendants claiming the estoppel must make out all the facts necessary, and, among others, show the change of circumstances.
But it may be said that even though there may have been no change in the solvency of the parties, -yet that our delay facilitated the escape of the forger. Our answers are, 'first, that the arrest of the forger is a public and not a private remedy ; and the court cannot presume that the simple arrest of the forger has any relation whatsoever to the recovery of the money. The *133 court must assume that the forger had as securely taken off himself and his property within three days, after he passed this draft to the Lexington Bank, as he had in thirty days, and so nobody lost anything in that respect. And if there were any loss from that cause the defendants must allege and prove it. Again, the loss from the possible removal of property by the forger is too remote to be taken into consideration, even if alleged and proved. The furthest the law will go is to consider whether the party responsible has lost his property,—i. e., became insolvent,—by our delay, so as to impair the remedy over of the defendants ; whether lie has removed it, or put it into a shape where it would be less accessible, is too remote a damage to be considered (Utica Bank v. Van Giesen, 18 Johns 485).
Therefore, we are entitled to judgment on this demurrer, because the sound rule is that we can recover, unless our delay has produced a change for the worse in the condition of the defendants, which it is for them to allege and prove.
X. No matter what loss to the defendants be alleged and proved as a consequence of our delay, yet where both sides are guilty of carelessness, the loss must fall upon the party who has been guilty of the first negligence in point of time, and we claim as a matter of fact that these are the defendants. The rule and practice now are that a bank presenting paper to another bank for payment is supposed to have made proper inquiries as to' its genuineness, and to have satisfied itself as to the character of the parties, &c., from whom they took it.
XI. The credit of negotiable paper does not require a different and peculiar rule as to estoppel. None of the cases have been put on the ground of the “ sanctity of commercial paper,” and if that were the ground, Goddard v. Merchants’ Bank, and Bank of Commerce v. Union Bank, are as much a violation of it as this case (see 4 Ohio [N. S.], 665).
XII. Although the precise point involved in Price v. *134 Neale has never been decided in this State, yet the tendency has been in favor of the plaintiff recovering in such cases (Bank of Commerce v. Union Bank, 3 N. Y. [3 Comst.], 230; Goddard v. Merchants’ Bank, 4 Id. [4 Comst.], 147).
XIII. Bank of the United States v. Bank of Georgia (10 Wheat., 333), rests upon Price v. Neale, and, moreover, that case was a case of one receiving that which he had issued as money, and reasons of public policy (Id., 345, 347), make a distinction between the case of money and bills of exchange. But on the principles above set forth, we deny the soundness of the rule even as to money. Levy v. Bank of the United States (4 Dall., 234) is a nisi prius case, and not well considered, and can he of hat small authority. Young v. Adams (6 Mass., 187) is also a case of money. But the best answer to all these cases is that they rest on Price v. Neale. So does National Bank of the Commonwealth v. Grocers’ National Bank (Com. Pl., 35 How. Pr., 412), which also involved only a small amount, and does not seem to have been very thoroughly argued.
XIV. This case cannot be considered as that of a bill forged de novo, in distinction from an altered bill. The cashier’s name having been written with the intention of binding the Ridgely Bank to the extent of fourteen dollars and twenty cents, the fact that the forger took out the name does not destroy the effect of this intention.
XV. But even if the drawer’s signature, after having undergone this treatment, is not wholly equivalent to a genuine signature, yet it would be unjust to consider it as wholly equivalent to a forged signature. If not genuine, it has many elements which make it fall short of a forgery. In deciding upon the genuineness of a draft, the drawee considers not only the handwriting of the signature, but the- engraving of the blank on which it is written, the canceling-stamp, the number of the draft (which was not changed in this case), and in many cases private marks on the blank. It is well known that *135 these "blank drafts are made by the Bank Note Company, especially for the different banks, and delivered to and carefully kept by them alone, and that the numbers are never duplicated. It may have been that , in this very case the plaintiffs’ teller doubted the drawer’s signature, but was re-assured by the number or by private marks on the draft.
XVI. But we are not within the doctrine of Price v. Neale at all. Every person who transfers mercantile paper, or any other chattel, impliedly warrants that it is genuine, and what it purports to be (Gibbs, Ch. J., in Jones v. Ryde, 5 Taunt., 493 ; Gompertz v. Bartlett, 24 Eng. L. & Eq., 158 ; Young v. Cole, 3 Bing. N. C., 730). Now, bearing in mind the undeniable fact that the defendants, as holders and transferees, were responsible for the genuineness of all parts of this draft, except the drawer’s name, and as between themselves and us, were bound to know of any alterations in it, it follows that we do not come within the case of Price v. Neale at all. that case rests on the fact that “ all the negligence was o i the part of the plaintiff ór party paying.” In this case the defendants are chargeable with negligence in not detecting the alterations in the body of the draft, and, therefore, “all the negligence” is not on our side. When defendants brought this paper to us, they guaranteed the genuineness of the body of the instrument, and in contemplation of law they were bound to know if anything were wrong about it.
' XVII. It cannot be said that, although if the drawer’s signature had been genuine, defendants would have been bound to repay, because they are responsible for alterations in the body of the instrument, yet that the rule does not apply where the drawer’s name is also forged. If our mistake had been the cause of theirs, or had had any tendency to mislead them as to any point on which they were bound to inquire, there would be some sense in saying that our mistake excused theirs, but our mistake having occurred after theirs, had no ef *136 feet on their judgment, nor any tendency to throw them" off their guard.
XVIII. If it be said that had we done our duty and detected the forgery of the drawer’s signature, the draft would not have been paid at all, and there would have been no loss, we answer that had the defendants and those behind them, done their duty, and detected the ■alterations in the amount and payee when the draft first ■came into their hands, there would have been, no loss at all.
XIX. The forgery of the name of the drawer does not preclude the acceptor or party paying,—for all the cases admit that the position of a person who has paid and seeks to recover back, is precisely the same as one who has accepted a bill and resists suit thereon,—from disputing any other point about the bill (2 Pars, on N. & B., 590 ; Beaman v. Duck, 11 Mees. & W., 251; Cooper v. Myer, 10 Barn. & C., 468).
XX. We respectfully ask that a decision be given upon all the points presented, to wit: 1. That where there has been any negligence on the part of the parties receiving, the plaintiffs may recover,—i. e., that the loss must fall where the first negligence in point of time has been. 2. That even where all the negligence is on the part of the party paying, we may recover, unless actual damage has occurred from change of circumstances. 3. That even if both these propositions are wrong, yet this is an altered draft, wherein the signature is genuine to all intents and purposes for fourteen dollars and twenty cents, as originally drawn. 4. And even if it be not a genuine signature of the drawer, yet we are only responsible for the original amount, and the defendants for the alterations.
J. H. V. Arnold, for the defendants, respondents.
Ingraham, J.
I agree that the drawee of a draft is bound to know the handwriting of the drawer, and when he pays a draft on which the name of the drawer has been forged, he is bound to bear the loss to the same *137 extent he would have been if the signature had been genuine.
But the liability extends no further'; and where the genuine draft has been altered, not only in the name, but in the amount to be payable, I do not think that rule should hold the drawee liable for any more than the amount of the original draft; and for the balance the plaintiff should recover.
It must be a very rare occurrence that a genuine draft should have the name of the drawer removed and then forged to the same instrument; but I think the rule as heretofore settled,—viz: that the drawee is bound to know the handwriting of the drawer, and is liable for a draft which he pays, although forged,—and the other,—that where the body of 'the draft is altered, the drawee may recover the amount from the person receiving it, — may both be applied to this case, and should lead to the result before stated.
Clerke, J., concurred.

 Reported post, p. 138.